UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CV-24067-GAYLES
MAGISTRATE JUDGE P.A. WHITE

JOHNNY LEE LASTER,

     Plaintiff,

v.                          REPORT OF MAGISTRATE
                                JUDGE RE MOTION
OFFICER LEE ET AL.,        FOR SUMMARY JUDGMENT
                                  (DE#51)

     Defendant(s).
_____/

## I.   Introduction

The plaintiff, Johnny Lee Laster filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 based on events which occurred in June of 2014 while he was confined at the Everglades Correctional Institution ("ECI"). (DE#1).   The Plaintiff was permitted to proceed without prepayment of the filing fee, but a debt to the Clerk of Court was established in the amount of $350.00. (DE#11).

This case has been referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. See 28 U.S.C. §636(b)(1)(B),(C); Fed.R.Civ.P. 72(b), S.D.Fla. Local Rule 1(f) governing Magistrate Judges, and S.D. Fla. Admin. Order 2003-19.

In the original complaint, the plaintiff named as defendants Office Lee, Correction Officer at ECI; Inspector General Jefferey Beasley; and ECI Warden Larry Mayo. (DE# 1, p. 3).

Plaintiff alleged that on June 5, 2014, while he was waiting

in the hall to be treated in the mental health department, Officer Lee sexually assaulted him.  He describes the assault in detail, alleging that she made sexual comments and then pulled his pants down and fondled his genitalia and rectum. (DE# 1, p. 4-9). After listing Beasley and Mayo as defendants, he made no further mention of these defendants.  He sought monetary damages, compensatory and punitive, in the amount of $5 million. (DE# 1, p. 5).

The Undersigned's report recommended that the claim proceed against Officer Lee for sexual harassment and assault. (DE# 12). The report noted that the plaintiff did not allege specific facts against Inspector General Beasley or Warden Mayo.  The report concluded he was suing them because they supervised Officer Lee. The Undersigned concluded that at this stage of the proceeding, the complaint should not proceed against Inspector General Beasley or Warden Mayo because the plaintiff failed to allege  anything other than the defendants' names.  He also failed to allege that these defendants condoned and/or otherwise created a policy or procedure whereby officers were permitted to sexually assault and brutalize inmates unnecessarily. (DE#12).

In the amended complaint, the plaintiff named as defendants ECI Corrections Officer Lee and ECI Warden Larry Mayo. (DE# 13, p. 3).  The allegations against Lee were identical to the allegations in the original complaint.  As a result, the Undersigned concluded in a report that the amended complaint should go forward against Officer Lee on the claim of sexual assault and sexual harassment. Because the plaintiff reiterated the relevant facts as to Officer Lee, the Report concluded that the amended complaint would supercede the original complaint and become the operative complaint. (DE# 15).

The amended complaint differed from the original complaint in that it included factual allegations against Warden Mayo. Laster submitted a written informal grievance to the Warden's office, but did not receive a response within ten days. He next filed a formal grievance. Laster was interviewed by an officer he identified as Colonel Lago as a result of his grievances. Lago told him to stop filing complaints. He next spoke with Assistant Warden Karen Scott about the incident. Because of his grievances, he was moved on October 17, 2014 at 2:00 am to Santa Rosa Correctional Institution (Annex) in retaliation. (DE# 13, p. 5). The Report recommended that the retaliation claim against Warden Mayo be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. (DE# 15). The District Court adopted the report on the amended complaint. (DE# 26).

Defendant Lee has now filed a Motion for Summary Judgment with supporting documentary exhibits and affidavits (DE# 51). Plaintiff was advised of the applicable law pertaining to summary judgment motions filed pursuant to Fed.R.Civ.P. 56 and his right to respond to the motion. (DE#63). Specifically, Plaintiff, as the non-moving party, was given appropriate notice of the Defendant's summary judgment motion, and was further advised of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (DE#63). Plaintiff did not file a response to the motion. Defendant Lee filed a pretrial statement. (DE# 70). The Plaintiff filed a statement of disputed facts. (DE# 71). The Defendant has filed a motion to strike the statement. (DE# 72).

II.   Applicable Legal Standards

A.   Summary Judgment

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Greenberg v. Bell-South Telecomm., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007)(per curiam); Fed.R.Civ.P. 56(c). In accordance with Celotex and its progeny,[1] a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion, and identifying those portions of the record, including pleadings, discovery material, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997). Further, all reasonable doubts about the facts must be resolved in favor of the non-movant. United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).

If the party seeking summary judgment meets the initial burden

---

[1]In Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citation omitted).

of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.), cert. den'd, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). However, this demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). The non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. Celotex, 477 U.S. at 322-23.

The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough to defeat a properly supported motion for summary judgment. See Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996); Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Further, conclusory allegations based on subjective beliefs

5

are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)(grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations...."); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Thus, when a Plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the Plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. Celotex, 477 U.S. at 322; Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir. 1987).

For summary judgment purposes, only disputes involving material facts are relevant. United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Lofton v. Secretary of the Department of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004)("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003)(citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that

6

there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. Celotex, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); Waddell, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

At this stage of the case, the evidence and all reasonable inferences from that evidence are viewed in the light most favorable to the nonmovant, but those inferences are drawn "only 'to the extent supportable by the record.'" Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010)(quoting Scott v. Harris, 550 U.S. 372, 381 n.8, 127 S.Ct. 1769, 1776 n.8, 167 L.Ed.2d 686 (2007)). Although factual inferences must be viewed in a light most favorable to the nonmoving party, the non-moving party has the burden of establishing by sufficient evidence a genuine issue of material fact. Beard v. Banks, 548 U.S. 521, 525 (2006).

B.   Section 1983 Standard

Title 42 U.S.C. §1983 imposes liability on anyone who, under

color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." See 42 U.S.C. §1983. Section 1983 does not create any substantive rights; it merely provides a remedy for deprivations of rights established by the United States Constitution or the laws of the United States. See Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). To state a claim under 42 U.S.C. § 1983, a Plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a Plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson Cnty. Commn., 10 F.3d 1535, 1541, n. 1 (11th Cir. 1994).

## IV. Discussion-Motion for Summary Judgment

The Defendant has filed a Motion for Summary Judgment with supporting exhibits and affidavits, arguing that he is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56, because (1) the Plaintiff did not suffer an injury as a result of the alleged sexual assault and, therefore, the Plaintiff has failed to establish a claim for sexual assault and is not entitled to damages; (2) the record evidence contradicts Plaintiff's version of events; and (3) the Defendant is entitled to qualified immunity. (DE# 51).

In support of her motion, the Defendant has submitted a

Statement of Uncontested Facts (DE# 52), along with multiple exhibits: Exhibit A&B, Deposition of Plaintiff Johnny Lee Laster (DE# 53-1, 53-2); Exhibit C, Exhibits to Plaintiff Laster's Deposition (DE# 54); Exhibit D, Affidavit of Captain Hines (DE# 125-3); Exhibit E, Affidavit of Assistant Warden of Programs Kavell Scott (DE# 125-4); Exhibit F, Affidavit of Chaplain Alex Lam (DE# 125-5); Exhibit G, Affidavit of Dr. Maier (DE# 125-6); and Exhibit H, Plaintiff's Sworn Statement given to Florida DOC Office of the Inspector General (OIG) (DE# 55). The contents of these exhibits are discussed below.

In presenting his version of events, the Plaintiff has filed a Declaration (DE# 62) and a statement of disputed facts, with a supporting affidavit (DE# 71).

Before addressing the facts, it must be noted that the Defendant, as the moving party asking for summary judgment, "always bear the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the Court to portions of the record which support the motion. Celotex Corp. v. Cartrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the non-moving party is then similarly required to cite to portions of the record which show the existence of a material factual dispute. Id. at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Nevertheless, if the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the

motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." <u>Fed.R.Civ.P</u>. 56(e)(2) & (3). As applied here, the Court notes that Plaintiff has failed to contest any of the facts put forth by Defendants in their joint summary judgment motion with supporting affidavits and exhibits. Plaintiff was advised of his right to respond to the summary judgment motion, but failed to do so. Thus, the court considers the supported facts put forth by Defendants as undisputed. <u>See</u> <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1282 n.4 (11th Cir. 2011)(<u>citing</u>, S.D. Fla. Local Rule 7.5(b),(c), & (d)).

## Defendant Lee's Statement of Facts

There is a main reception area in the Multi-Purpose Building at ECI. There is an officer in charge of the reception area. (DE# 125-3, Exhibit D, Affidavit of Captain Hines, ¶5). The reception waiting room is connected to 2 different buildings by locked doors. The officer in charge must unlock the doors to allow prisoners and staff to walk from the reception area to the two different buildings, unless the staff member has their own key. (<u>Id.</u>:¶6).

The hallway where Laster alleged the incident took place is a circular-shaped hallway. (<u>Id.</u>:¶7). There are many staff offices located in the circular-shaped hallway. For example, some of the mental health staff and classification officers have offices located in this hallway. (<u>Id.</u>:¶8). There is also a large office with a window in the door facing the hallway where Laster alleges the incident occurred. (<u>Id.</u>:¶9). <u>See also</u> (DE# 54, Exhibit A to Plaintiff's Deposition).

The circular hallway also has doors connecting it to the

dental and medical buildings. (DE# 125-3, Exhibit D, Affidavit of Captain Hines, ¶10).  The circular hallway is open and very busy, traveled by staff members and inmates at all times of the day. (Id.:¶11).

In particular, the mental health staff members have offices that open up to the hallway where Inmate Laster claims he was standing when he was sexually assaulted. The grievance coordinator also has an office at the very end of the hallway. (Id.:¶12).  In Captain Hines's opinion, it is not likely that an officer would chose the hallway in the mental health building to commit a sexual assault on an inmate, as described by Laster in his lawsuit. (Id.:¶13).

Kavell Scott is the Assistant Warden of Programs at Everglades CI. (DE# 125-4, Exhibit E, Affidavit of Kavell Scott, ¶1).  She is the Prison Rape Elimination Act (PREA) Coordinator at Everglades CI. (Id.:¶4).  As the PREA Coordinator, her duties include educating prison personnel and inmates on preventing and reporting sexual assaults and rapes. (Id.:¶5).  Kavell Scott is familiar with the procedures of the Florida Department of Corrections concerning the management of PREA complaints. (Id.:¶6).

Upon receipt of any information from an inmate that he or she had been raped or sexually assaulted, the Management Information Notes System (MINS) would be accessed and used to document the allegation. An Incident Report would also be prepared. (Id.:¶7). Medical and Mental Health treatment would be provided to the inmate.  The inmate would also be place in Administrative Confinement for the inmate's safety pending an investigation. (Id.:¶8). The Office of Inspector General would also be notified. (Id.:¶9).

On January 30, 2014, while at Everglades CI, Laster received orientation concerning PREA and the Grievance Procedure. (Id.:¶ ¶10, 11). On April 23, 2012, while at South Florida Reception Center, Laster watched the video regarding the Prison Rape Elimination Act. (Id.:¶13). Laster did not report to Kavell Scott or anyone else in her presence, that he had been the victim of a sexual assault or rape. If he had, Ms. Scott would have immediately implemented procedures regarding PREA Complaints. (Id.:¶14).

Kavell Scott reviewed the OIG Report Number, Case #15-4200. The report indicates Laster stated another inmate sodomized him and threatened him with the following words: "Don't let people know I get down. It ain't nothing to end your life." (Id.:¶15). Kavell Scott also reviewed Laster's Amended Complaint (Id.:¶16), wherein Laster alleged that Officer Lee made the following statement: "a real man don't kiss and tell. So be careful what you say and watch your walk. Because it ain't nothing to have you stop breathing." (DE# 13, Amended Complaint).

Alex Lam is employed as the Senior Chaplain with the Florida Department of Corrections at Everglades CI. (DE# 125-5, Exhibit F, Affidavit of Alex Lam, ¶1). Mr. Lam does not have an independent recollection of Inmate Johnny Laster, DC# B00741. (Id.:¶4). Mr. Lam checked his records and found that an inmate by the name of Johnny Laster was assigned as an orderly in the Chapel for approximately one month, from September 14, 2014 through October 17, 2014. (Id.:¶5). Mr. Lam knows Kavell Scott of Everglades CI. (Id.:¶6). Mr. Lam does not remember meeting with Inmate Johnny Laster and Assistant Warden Kavell Scott in his office at ECI nor in any other location. (Id.:¶7).

If an inmate had reported to Mr. Lam or anyone else in his

presence that the inmate had been the victim of a sexual assault, Mr. Lam would have immediately reported it to prison officials. (Id.:¶8). Based on his knowledge of Assistant Warden Kavell Scott, Mr. Lam believes if an inmate ever reported he had been sexually assaulted, Ms. Scott would also report it immediately. (Id.:¶9).

Mr. Lam does not remember Laster reporting he was having any problems with correctional staff. If Laster had reported a problem of this nature, Chaplain Lam would have reported it to prison officials immediately. (Id.:¶10). Based on Chaplain Lam's knowledge of Assistant Warden Kavell Scott, he believes if an inmate ever reported he was having problems with correctional staff as stated, Kavell Scott would have promptly acted upon the allegation. (Id.:¶11).

Albert Maier, M.D., J.D., is employed as a Senior Physician with the Office of Health Services of the Florida Department of Corrections. (DE# 125-6, Exhibit G, Affidavit of Dr. Maier, ¶1).

Laster was seen by mental health professionals at ECI on the following dates: 1/2/14, 3/11/14, 3/12/14, 3/26/14, 4/8/14, 6/2/14, 6/5/14, 6/9/14, 6/20/14, 7/2/14, 7/13/14, 8/5/14, 8/20/14, 9/2/14, 9/16/14, 9/17/14, 9/25/14, 10/1/14, 10/14/14, 10/15/14, and 10/18/14. (Id.:¶14, ¶9-56). Laster did not complain of a sexual assault during any of these visits. (Id.).

On January 2, 2014, Laster denied hallucinations but reported he was trying to distinguish between voices and self-talk. (Id.:¶9). On March 11, 2014, Laster was seen by Mental Health Specialist Gonzalez and reported, "I've had a problem with the staff – I wrote grievances." (Id.:¶10). On March 12, 2014, Laster was seen by Physician's Assistant ("PA") Rivero-Guevara and

reported he wanted to stop the tregretal medication. The tegretal was discontinued. He also refused refills for Haldol and Cogentin. (Id.:¶11). On March 26, 2014, Laster was seen by PA Rivero-Guevara and reported he was doing well and was impressed that the PA remembered him. (Id.:¶12). On April 8, 2014, Laster reported he was "going with the flow" and was "trying to start a company." (Id.:¶13).

On June 2, 2014 at 3:15 p.m., Laster told PA Rivero-Guevara that he had not had any medications for over a month, he needed the meds, and that he did not feel good. (Id.:¶15). On June 5, 2014, Laster reported, "I had to get my meds renewed," discussed dorm issues, talking issues, and dealing with officers. (Id.:¶16).

Plaintiff alleged the incident occurred on June 5 or 6, 2014. (DE#13, Amended Complaint, Statement of Claim; DE# 53-1, Plaintiff's Deposition, p. 10).

On June 9, 2014, Laster reported he wanted to be a coach and felt that even if he was released that date he would not amount to anything. (DE# 125-6, Exhibit G, Affidavit of Dr. Maier, ¶17). During this first examination following the alleged incident, Laster did not mention the sexual assault. (Id.). On June 20, 2014, Laster reported he was all right and he was going to medical later.(Id.:¶18).

On July 2, 2014, Laster reported, "This place is crazy." He discussed frustration with officers saying staff is bullying. Mental Health Specialist Gonzalez noted the inmate's bullying claim was strange and without evidence. (Id.:¶19). On July 13, 2014, Laster was seen by LPN Joseph and reported he was still feeling good and his medications were all right. He did not report any

14

problems. (Id.:¶20). On August 5, 2014, Laster was seen by PA Rivero-Guevara and reported that he needed his medications but refused Haldol which was making him constipated. (Id.:¶22).

On August 20, 2014, at 9:50 a.m., Laster was seen by Mental Health Specialist Gonzalez and reported, "I have been waiting 2 hours." (Id.:¶23). Also on August 20, 2014, Laster was seen by PA Rivero-Guevara and reported he was fine with no issues to discuss. He complained only of shoulder pain. (Id.:¶24).

On September 2, 2014, Laster reported he was feeling better and wanted to be off his medications as he had not heard voices in a while. (Id.:¶25). On September 16, 2014, Laster was seen by PA Rivero-Guevara and Laster reported he was fine with his dose of medications and wanted to see how he was feeling in 30 days. (Id.:¶26). On September 17, 2014, Laster was seen by Mental Health Specialist Gonzalez and reported, "I am working toward goals. I am a Chapel Orderly." Gonzalez noted Laster was very happy and actively engaged. (Id.:¶27).

On October 1, 2014, Laster was seen by Mental Health Specialist Gonzalez and reported it was his birthday, he was fine, and his medication Prolixin was "keeping [him] good". (Id.:¶29). On October 14, 2014 and again on October 15, 2014, Laster was seen by Mental Health Specialist Gonzalez and reported he was fine with no problems. (Id.:¶¶31, 32). On October 18, 2014, Laster was seen by Dr. David Reddick at Everglades CI for renewal of his medication. (Id.:¶33).

In October of 2014, Laster moved to Santa Rosa Correctional Institution (SRCI). From October 22, 2014 through August 13, 2015, Laster was seen multiple times in the medical department of SRCI.

(Id.:¶34-73).

On October 22, 2014, Laster was seen by RN Simpson and complained of a shoulder injury and requested a renewal of his restricted activity pass. The pass was renewed. (Id.:¶34). On October 23, 2014, Laster's vital signs were taken but he left the SRCI medical department before being seen. (Id.:¶35). On October 24, 2014, Mental Health Specialist Smith performed a Mental Health Evaluation of Laster at SRCI. Laster reported having auditory hallucinations within the past 30 days. (Id.:¶36).

On October 28, 2014, Laster was seen by ARNP Shelta Szatal and reported, "I don't need a pass". (Id.:¶37). On October 29, 2014, Laster was seen by Mental Health Dr. J.B. Sapoznikoff and reported he had "pressured thoughts." Dr. Sapoznikoff added Depakote to Laster's medications. There is no mentin of an alleged sexual assault in Dr. Sapoznikoff's notes. (Id.:¶38).

On December 14, 2014, Laster was seen by Nurse Derrick and complained of hemorrhoids and requested a stool softener. He did not complain of a sexual assault. (Id.:¶40). On December 15, 2014 and December 17, 214, Laster refused his Depakote medication. (Id.:¶41).

On February 16, 2015, Laster received a Pre-Special Housing Health Evaluation. He did not have any medical complaints. He did not complain of a sexual assault by Officer Lee or anyone else. (Id.:¶42).

On March 12, 2015, Laster was seen in the SRCI Emergency Room complaining he had "been raped by another inmate" on February 15, 2015.  He did not complain of a sexual assault by Officer Lee of

Everglades CI. (Id.:¶43). No injuries were noted for the alleged sexual assault of February 15, 2015. (Id.:¶44).

On April 16, 2015 Laster was seen in Medical complaining of shoulder pain. He did not complain of a sexual assault. (Id.:¶45). On May 29, 2015, Laster received a Pre-Confinement Housing Health Evaluation. He did not have any medical complaints. (Id.:¶46).

On June 3, 2015, Nurse Douglas filled out an Alleged Sexual Battery Protocol Form and performed a physical examination of Laster who alleged he had been sexually assaulted a year earlier on June 5, 2014. There were no injuries noted. (Id.:¶47). Nurse Douglas also filled out a "Diagram of Injury" form and documented there were no injuries noted. (Id.:¶48).

On June 10, 2015, Laster was seen by Mental Health Professional Young and reported his medication was not working and that he was under a PREA investigation. Young noted that Laster appeared fine and was smiling throughout the whole session. (Id.:¶49). On July 23, 2015, Laster was seen by Mr. Young and reported he was doing "bad" due to "dealing with these two incidents." Mr. Young documented that Laster reported having trouble with officers "trying him" based on their knowledge of the PREA investigation. (Id.:¶50). On August 13, 2015, Laster was seen by Mr. Young and reported he was doing poorly "due to people thinking [he is] a homosexual and so some inmates are testing and trying" him. (Id.:¶51).

Dr. Maier reached the following conclusion after reviewing the Plaintiff's medical records. The medical and mental health records corroborate my medical opinion and impression that this inmate is psychotic, probably attenuated schizophrenia (in the new DSM-5

17

classification) characterized by persisting auditory hallucinations since age 10, continuing despite medical therapy and treatment with Trilafon and Prolixin. His behavior is agitated, capricious, and polymorphic perverse, vacillating between flagrant auditory hallucination driven agitation and intervening periods of "being just fine." Viewed across the spectrum of time commencing in pre-adolescence to the present we see a fabric of poorly organized behaviours periodically punctuated by fulminant agitated losses of control. His psychosis is maintained by episodic employments of "allegations de jour" evoked to address periods of disorganization and/or stress. The medical record is devoid of any evidence of reality founded sexual abuse of any type, despite the inmate's claims to the contrary which must be considered faux claims to seek attention or attempt control. (<u>Id.</u>:¶50).

## Plaintiff's Statement of Facts

The Plaintiff testified to the following facts during a deposition. (DE# 53-1, 53-2, Exhibit A& B, Deposition of Plaintiff Johnny Lee Laster). He was housed in ECI from January 2014 until October 2014. (DE# 53-1:9). On June 5 or 6, 2014, a male officer escorted him to the mental health department for an appointment. (<u>Id.</u>:35). Once in the mental health wing, Officer Lee told the male officer to leave and said she would watch Laster. (<u>Id.</u>:36). Once they were alone, Lee told Laster to face the wall. (<u>Id.</u>:38). She put on gloves and said she was going to search him. (<u>Id.</u>:47). She put her hands in his pants, groped his penis, and put her finger in his anus. (<u>Id.</u>). She claimed she was conducting a cavity search. (<u>Id.</u>:48). His hands were handcuffed behind his back the entire time. (<u>Id.</u>:51). Afterwards she said "A real man don't talk because ain't nothing to get you to stop breathing." (<u>Id.</u>:58).

B. <u>Analysis</u>

It has been recognized by the 11th Circuit that "severe or repetitive sexual abuse of a prisoner by prison official can violate the Eighth Amendment." <u>Boxer v. Harris</u>, 437 F.3d 1107, 1111 (11th Cir. 2006). An Eighth Amendment violation requires proof of a "sufficiently culpable state of mind" and an "objectively, sufficiently serious" injury. <u>Id.</u> (citations omitted); <u>see also</u> <u>Washington v. Harris</u>, 186 F. App'x 865, 866 (11th Cir. 2006) (holding that a prisoner's allegations he suffered "momentary pain, 'psychological injury,' embarrassment, humiliation, and fear" after he was subjected to an officer's offensive and unsolicited touching were *de minimis* injuries — not constitutional violations "repugnant to humanity's conscience" — even if the officer's conduct was inappropriate and vulgar); <u>Jackson v. Madery</u>, 158 F. App'x 656, 661 (6th Cir. 2005) (holding allegation of "rubbing and grabbing [prisoner's] buttocks in a degrading and humiliating manner[,]" corroborated by three other inmate statements after the incident, did not amount to an Eighth Amendment violation); Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997) (upholding the district court's finding that a few incidents involving verbal harassment, touching, and pressing without consent were not sufficiently serious to constitute an Eighth Amendment violation, while "they may potentially be the basis of state tort actions").

Severe or repetitive sexual abuse has "'no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.'" <u>Id.</u> (quoting <u>Boddie v. Schneider</u>, 105 F.3d 857, 861 (2d Cir. 1997). The test for whether sexual abuse has risen to the level of a constitutional violation has both subjective and objective component. <u>Boxer</u> at 111. The injury must be "objectively,

19

sufficiently serious," and the official must subjectively have a
"sufficiently culpable state of mind." Id. In Boxer the court held
that an inmate who had been forced to strip and masturbate before
a female officer by threat of reprisals suffered on a de minimus
injury, which did not violate the Eight Amendment. Id.

In Boddie a male prisoner complained of several verbal and
physical encounters with a female corrections officer. The prisoner
complained that the female officer made suggestive comments which
he interpreted as a "pass". Boddie at 859. He also alleged that on
different occasions the female officer: (1) squeezed his hand and
touched his penis while making a sexual remark; (2) pinned him
against a wall while pressing her breasts against him; and (3)
pressed her vagina against his penis. Id. at 860. The court found
that the small number of incidents alleged, although despicable,
did not rise to the level of an Eighth Amendment violation. Id. at
862.

In the instant case the Plaintiff has alleged the Officer Lee
put on gloves, put her hand in his pants, rubbed his penis, and
then put her finger in his anus.  She claimed she was conducting a
cavity search.   Although these allegations, if true, are, as the
court described in Boddie, despicable, however as in Boddie they do
not rise to the level of constitutional violation. The Plaintiff
suffered no physical injury and reported no psychological harm
despite numerous encounters with mental health professionals. The
Defendant Lee is entitled to summary judgment because the facts as
alleged  simply  do  not  warrant  relief  for  a  constitutional
violation. In finding that there is no basis for relief under
section 1983, the undersigned is in no way condoning the alleged
behavior. This court reaches this conclusion by relying exclusively

20

on the Plaintiff's version of events.[2]

In the alternative to an Eighth Amendment cause of action, these facts also fail to support a claim alleging a Fourteenth Amendment violation as a result of the sexual assault and harassment. "The Due Process Clause affords [a plaintiff] no greater protection than does the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 327 (1986) ("It would indeed be surprising if, in the context of forceful prison security measures, 'conduct that shocks the conscience' or 'afford[s] brutality the cloak of law,' and so violates the Fourteenth Amendment, . . . were not also punishment 'inconsistent with contemporary standards of decency' and 'repugnant to the conscience of mankind,' . . . in violation of the Eighth [Amendment]." (some alterations added; citations omitted)).

### 3. Conclusion

In the absence of genuine issues as to any material fact, the Defendant is entitled to summary disposition of the complaint against her. See Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, supra. See also Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990); Coleman v. Smith, 828 F.2d 714 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987).

Therefore, the Undersigned finds Plaintiff has failed to present any evidence to support his claim against the Defendant. In contrast, the Defendant has met her evidentiary burden. The motion for summary judgment (DE#51) filed by the Defendant should, therefore, be granted in that the pleadings, together with the

---

[2]Having concluded that the Defendant is entitled to summary judgment, this court need to address the qualified immunity argument.

21

documentary exhibits, show that there is no genuine issue as to any material fact, and that Defendant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## V. Recommendation

Based upon the foregoing, it is recommended that the Defendant's Motion for Summary Judgment (DE#51) be GRANTED; that Defendant Lee's motion to strike (DE#71) be DENIED as moot; that all pending motions, not otherwise ruled upon herein, be denied as moot; and, that the case be closed.

Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. §636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).

SIGNED this 6th day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Johnny Lee Laster, Pro Se
     DC # B00741
     Madison Correctional Institution
     Inmate Mail/Parcels
     382 SW MCI Way
     Madison, FL 32340

     Monica Galindo Stinson

22

```
Office of Attorney General
110 S.E. 6th Street
10th Floor
Fort Lauderdale, FL 33301
954-712-4684
Fax: 954-712-4700
Email: Monica.Stinson@myfloridalegal.com
```